# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
**No. 19-296V**
UNPUBLISHED

|  |  |
|---|---|
| G.C., | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: August 9, 2022 |
| | Re-Filed as Redacted: |
| SECRETARY OF HEALTH AND | December 8, 2023 |
| HUMAN SERVICES, | |
| | Special Processing Unit (SPU); |
| Respondent. | Ruling on Entitlement; Concession; |
| | Table Injury; Influenza (Flu) Vaccine |
| | and Tetanus Diphtheria acellular |
| | Pertussis (Tdap) Vaccine; Shoulder |
| | Injury Related to Vaccine |
| | Administration (SIRVA) |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA,* for Petitioner.

*Naseem Kourosh, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLEMENT[1]

On February 25, 2019, G.C. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration

---

[1] When this decision was originally filed, I advised my intent to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), Petitioner filed a timely motion to redact certain information. This decision is being posted with Petitioner's name redacted to reflect his initials only. Except for those changes and this footnote, no other substantive changes have been made. This decision will be posted on the court's website with no further opportunity to move for redaction.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

("SIRVA") after receiving the influenza ("flu") and tetanus diphtheria acellular pertussis ("Tdap") vaccinations on October 2, 2017. Petition at 1. Petitioner further alleges the vaccinations were administered within the United States, that he suffered the residual effects of his injury for more than six months after the administration of the vaccinations, and that no lawsuits have been filed or settlements or awards accepted by anyone, including the petitioner, due to Petitioner's vaccine-related injury. Petition at 1, 9. The case was assigned to the Special Processing Unit of the Office of Special Masters, and Respondent has contested entitlement.

For the reasons discussed below, I **GRANT** Petitioner's motion for a ruling on the record (ECF No. 48), because he has established the elements of a Table SIRVA claim.

## I.   Relevant Procedural History

Approximately eleven months after this case was initiated, Respondent filed his Rule 4(c) Report (Respondent's Report) on January 28, 2020, opposing compensation. ECF No. 34. Respondent only disputed that Petitioner had established onset of symptoms occurred within 48 hours of vaccination. Respondent's Report at 6-8. On February 11, 2020, Petitioner filed a response to the Rule 4(c) Report addressing an agreed-upon scrivener's error for a medical visit that occurred prior to Petitioner's vaccination. ECF No. 35.

On April 13, 2020, I ordered Petitioner to file any additional evidence that might be relevant to Respondent's assertions in Respondent's Report, and/or supportive of his onset arguments, among other things. ECF No. 36. Petitioner was also ordered to prepare a settlement demand (taking into account litigative risk) to submit to Respondent. *Id.* Petitioner filed the requested documentation, and on July 27, 2020, I ordered the parties to begin settlement negotiations. On August 7, 2020, Respondent reported that he had "reviewed [P]etitioner's settlement demand and the evidence filed to date, is not interested in settlement at this time, and requests that this case remain on a litigation track." ECF No. 44.

I then directed the parties to file briefs that would assist my resolution of the disputed issues. Scheduling Order (NON PDF), Entered: 06/20/2021. On July 2, 2021, Petitioner filed a motion for a ruling on the record regarding onset and entitlement more generally. ECF No. 48 (Br.). On August 6, 2021, Respondent filed a response, again addressing only onset. ECF No. 49 (Resp.). On August 23, 2021, Petitioner filed a reply to Respondent's response. ECF No. 50 (Reply). The matter is now ripe for adjudication.

## II.    Relevant Factual Evidence

I have reviewed all of the medical records, affidavits, the petition, Respondent's Report, and the parties' respective briefs, and find the following facts most relevant:

At the time of vaccination, G.C. was a 67-year-old who did some accounting work, as well as piece work on auto electric modules for his son's company. Ex. 11 at 1. Petitioner had a non-contributory medical history. *Id.* Petitioner received both the flu and Tdap vaccinations in his left deltoid on October 2, 2017. Ex. 1 at 1. In his affidavit, G.C. stated that the vaccinations "seemed fairly routine" but that he "started to have pain in [his] left arm the day after [his] vaccines." Ex. 11 at 2. G.C. recalled that "[o]ver the next several weeks, [his] activities became increasingly limited because [he] could not raise [his] left arm above chest height without a lot of pain." *Id.* at 2-3.

On October 19, 2017, G.C. was seen by his primary care physician (PCP) for removal of actinic keratoses on the left ear, left temple, and nostril using cryotherapy. Ex. 2 at 22-23. On October 24, 2017, Petitioner received a prescription refill from his PCP, which was sent electronically to a pharmacy. *Id.* at 20-21. There is no evidence that Petitioner was seen in-person on this date. *See id.*

On February 15, 2018 (approximately four months post-vaccination), G.C. presented to his PCP with a chief complaint of left arm pain. Ex. 2 at 18. The nurse's notes state: "Pt c/o left arm pain x4 months. He states he cannot lift the arm and has a sharp pain in it. He states this started after he was given the influenza and Tdap shots in both arm[s]." *Id.* On physical examination it was noted, Petitioner "CANNOT ABDUCT LEFT ARM AT SHOULDER PAST 90 DEGREES NO ABNORMALITY ON PALPATION." *Id.* at 19. The plan stated, "[r]eviewed possible dx. Wants to avoid MRI for now. One refill ibuprofen. I demonstrated rehab exercises that he will do at home. He will call and give us an update in 1 month." *Id.*

On April 20, 2018, and again on April 23, 2018, G.C. called his PCP's office stating "his L shoulder is not getting any better. Stated he is having a hard time raising it over his head. Would like a referral for MRI." Ex. 2 at 16-17. On April 25, 2018, G.C. sent a message to his PCP via the Patient Portal. Ex. 2 at. 9. G.C. stated:

Hi Dr Baldwin, my arm is still bothering me and I would like to get an MRI done on it. I talked with my insurance company and that is what they recommended. The throbbing pain mostly at night has finally quit but it is

> pretty much useless trying to lift anything above my chest or overhead with my left arm; seems to lock up and the pain won't let me. I took most of the [ibuprofen] (seventy) but quit as they were making me [drowsy] driving home from work; afraid I was going to wreck and kill somebody. Did the exercises the best I could but something is not right and I need to know what it is.

*Id.* On April 26, 2018, G.C. underwent an MRI of his left shoulder. *Id.* at 6. The MRI revealed, "Complete tear of the rotator cuff. Early degenerative changes in the glenohumeral joint. Muscle and tendon impingement secondary to AC joint degenerative disease." *Id.*

On June 7, 2018, G.C. had an orthopedic surgery consultation. Ex. 2 at 1. Petitioner reported that his left shoulder pain began after a flu and Tdap vaccinations. *Id.* It was noted that Petitioner "had had a previous episode where he didn't tolerate injections well and had normally tried to avoid injections. Because of this, he states he has filed a claim related to shoulder injury related to vaccine administration." *Id.* The impression was a left full-thickness rotator cuff tear. *Id.* The recommendation states,

> Since he hasn't done well with medical treatment, and with pending litigation, surgical outcomes are typically less beneficial, and certainly he seems to have had more than his share of untoward reactions. Consequently, I have explained to him that he can get relief of symptoms with physical therapy by strengthening the muscles that are still intact, without taking on any of the risks of surgical treatment. He would like to try this and consequently was provided with a prescription for physical therapy two times per week and then I will plan to see him back in one month, to see if this is proving to be of any benefit.

*Id.*

On June 16, 2018, G.C. filed a Vaccine Adverse Event Reporting System (VAERS) Report. Ex. 6 at 1. On the VAERS Report, Petitioner reported that his left arm pain began on October 3, 2017. *Id.* at 1-2.

On June 19, 2018, Petitioner had his initial physical therapy (PT) visit, and reported pain that had been ongoing since October 2017, following what he reported was an injection into his shoulder that was too high. Ex. 5 at 9. Petitioner reported that he lost a lot of range of motion and strength overall. *Id.* Petitioner indicated that "lately he feels like his shoulder is improving functionally, however he is rather frustrated with the situation

and is upset with not being able to complete all tasks that he normally would have. [Patient] has most difficulty with reaching, carrying, and lifting as well as sleeping on his shoulder. [Patient] denies any numbness or tingling, and reports no surgeries or trauma to his shoulder other than what was reported." *Id.* The evaluation states that Petitioner would benefit from PT to improve range of motion, strength, and overall function. *Id.* at 10. By July 12, 2018, Petitioner had six PT visits, and he had full range of motion and better joint mobility. Ex. 5 at 12-13. He still had some tightness in the posterior capsule, and his strength was not where it had been prior to injury. *Id.*

On July 30, 2018, G.C. returned to the orthopedist, reporting that although his pain had not completely resolved, it was much improved resulting in better sleep and significantly better range of motion. *Id.* Additionally, G.C. reported pain while lifting anything of appreciable weight from a height, but was not having to take any medicine on a routine basis. *Id.* The orthopedist noted that Petitioner's tear would not heal on its own, and even if symptoms subside there is a possibility of extending the tear and losing more function. *Id.* Petitioner was noted to be very pleased with therapy and decided to continue on an independent exercise program. *Id.* Petitioner returned to the orthopedist on October 4, 2018, noting that his pain had markedly decreased and he was sleeping better, however, he was still not able to sleep on his right side. Ex. 10 at 1. According to Petitioner, he continues to have difficulties with his left shoulder. Br. at 10.

Petitioner provided two affidavits and supporting affidavits from seven family members, friends, and coworkers regarding the onset his pain. Exs. 11, 13-15, 19-23.

## III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact Regarding Onset

Respondent maintains that the record does not demonstrate by preponderant evidence the onset of Petitioner's alleged SIRVA injury within the timeframe required by the Vaccine Injury Table (Table). Resp. at 1. In particular, "the medical records indicate that [P]etitioner did not report or receive medical treatment for complaints of shoulder pain until four months after vaccination – despite seeing his primary care physician for two visits during the intervening four months." *Id.* at 2. Respondent further argues that Petitioner relies on medical records which reflect histories reported by Petitioner more than four months after vaccination, and are thus based on the claims of Petitioner. *Id.* Finally, Respondent argues that Petitioner "relies upon his declarations and those of his family members, friends, and coworkers – all created during the course of this litigation and filed both before and after [R]espondent's Report – to establish what the contemporaneous medical records do not: that his shoulder pain began within 48 hours of vaccination." *Id.*

Respondent's arguments are unpersuasive, for several reasons. First, he effectively suggests that to establish a Table injury, a petitioner must obtain medical care for his shoulder pain *within* the first 48 hours after vaccination. But the Vaccine Act does not impose such a requirement. *See* Section 13(b)(2) (permitting a special master to find onset "even though the occurrence of such symptom *was not recorded* or *was incorrectly recorded* as having occurred outside such time period," and only requiring a preponderance of the evidence) (emphasis added); *see also Stevens v. Sec'y of Health & Human Servs.*, No. 90-221V, 1990 WL 608693, at *3 (Fed. Cl. Spec. Mstr. 1990) (noting that clear, cogent, and consistent testimony can overcome missing or even contradictory medical records). In this case, Petitioner consistently associated his shoulder pain with receiving the Tdap and flu vaccinations in his left arm, and consistently reported to his physicians that he began experiencing shoulder pain after receiving the vaccinations. *See e.g.*, Ex. 2 at 18 Ex. 4 at 4. Thus, the mere fact that no record within 48 hours of vaccination confirms the onset does not preclude a finding on this issue in Petitioner's favor.

Second, Respondent argues that Petitioner saw his PCP for two visits during the intervening four months between his vaccination and the date of first reporting. Resp. at 2. Thus, the fact that pain was not reported on these occasions undermines Petitioner's onset argument.

The relevant records, however, are not as supportive of this argument as Respondent contends. For example, there is no evidence that second intervening visit on October 24, 2017, was an in-person visit with a physician, but instead appears merely to have been for a prescription refill. *See* Ex. 2 at 20-21. And the other intervening appointment - on October 19, 2017, for cryotherapy for lesions on his face (Ex. 2 at 22) was solely for that purpose. Reply at 3 citing *Murphy v. Sec'y of HHS*, 23 C. Ct. 726, 733 (Fed. Cl. 1991) (aff'd 968 F.2d 1226 (Fed. Cir. 1992)). A single intervening medical encounter where only one issue was addressed is not enough to disprove onset. Certainly that record does not negate the onset argument directly (e.g. by referencing no shoulder complaint).

I also do not conclude that Petitioner's treatment delay undermines his onset assertions. Petitioner's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory. *See, e.g., Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for review denied,* 142 Fed. Cl. 329 (2019), (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment). When Petitioner reported his pain, he even stated that he had been trying to "tough it out." Ex. 2 at 18. The temporal delay is not lengthy enough to cast doubt on a shorter onset.

Respondent goes on to contend that the later medical records identifying a short onset timeframe represent only Petitioner's own claims regarding onset. Rule 4(c) Report at 6; Response at 1-2 (citing Section 13(a)(1); *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259 (1997)). As I have previously recognized,[3] however, *Lett* is inapposite, because the petitioners therein failed to obtain *any* medical records that demonstrated that their minor child had experienced the alleged injury at *any time*, much less within the timeframe for a Table injury. 39 Fed. Cl. at 262. Moreover, the *Lett* petitioners' expert neurologist conceded that he could not identify any events that could have represented seizures, based on either the Table definition or his own medical knowledge. *Id.* In denying the petitioners' motion for review, the Court of Federal Claims stressed that there

---

[3] *Smith v. Sec'y of Health & Human Servs.*, No. 19-1384V, 2021 WL 6285638 (Fed. Cl. Spec. Mstr. Dec. 2, 2021); *Hartman v. Sec'y of Health & Human Servs.*, No. 19-1106V, 2021 WL 4823549, at *4 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

was "no corroborating evidence that [their minor child] ever suffered a seizure." *Id.* at 262-63. This is distinguishable from a medical provider's *later* documentation of the injury alleged and acceptance of the petitioner's history of the inciting circumstances. Such "information supplied to… health professionals" is presumed to be trustworthy, especially in the absence of evidence supporting a different onset or a different precipitating event. *Cucuras*, 993 F.2d at 1528.

For the foregoing reasons, G.C. has established that he suffered the onset of shoulder pain within 48 hours after vaccination.

## V.     Other Table Requirements and Entitlement

In light of the lack of other objections and my own review of the record, I find that Petitioner has established the other requirements for a Table SIRVA claim. Specifically, there is not a history of prior shoulder pathology that would explain her injury. 42 C.F.R. § 100.3(c)(3)(10)(i). There is no evidence of any other condition or abnormality that represents an alternative cause. 42 C.F.R. § 100.3(c)(3)(10)(iii). The medical records and affidavits support that his shoulder pain and reduced range of motion were limited to the left shoulder. C.F.R. § 100.3(c)(3)(10)(iv). The contemporaneous vaccination record reflects the site of administration as his left deltoid. Ex. 1; Sections 11(c)(1)(A) and (B)(i). Petitioner has not pursued a civil action or other compensation. Ex. 12; Section 11(c)(1)(E). Finally, Petitioner suffered the residual effects for more than six months after vaccination. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A subsequent order will set further proceedings towards resolving damages.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master