# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-296V

| | |
|---|---|
| G.C., <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Chief Special Master Corcoran <br><br> Filed: December 8, 2023 |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On February 25, 2019, G.C. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the influenza ("flu") and tetanus diphtheria acellular pertussis ("Tdap") vaccinations on October 2, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although I determined that Petitioner was entitled to compensation under the Vaccine Act, the parties could not resolve damages on their own, and therefore their dispute was submitted for resolution at a "Motions Day" proceeding.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$50,893.74, representing $50,000.00 for actual past pain and suffering, plus $893.74 for past unreimbursed expenses.**

### I. Relevant Procedural History

Approximately eleven months after this case was initiated, Respondent filed his Rule 4(c) Report on January 28, 2020, opposing compensation. ECF No. 34. On March 28, 2022, Petitioner filed a Motion for a Ruling on the Record, and on August 9, 2022, I issued a ruling on entitlement finding that Petitioner provided preponderant evidence satisfying all requirements for a Table SIRVA, and thus was entitled to compensation. ECF Nos. 48, 51.

The parties thereafter attempted to informally resolve damages but were unsuccessful, and Petitioner filed a brief to substantiate his damages request. ECF No. 62 ("Br."). Respondent reacted with a brief of his own, and then Petitioner filed his reply. ECF Nos. 63 ("Opp."), and 64 ("Resp."). The parties agreed to argue their positions at a Motions Day hearing, at which time I would decide the disputed damages issues. ECF. No. 66. That hearing was held on October 6, 2023.[3] The case is now ripe for a determination.

### II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, the Rule 4(c) Report, the Ruling on Entitlement and the parties' respective pre-hearing briefs. In summary, at the time of vaccination G.C. was a 67-year-old who did some accounting work, as well as piece work on auto electric modules for his son's company. Ex. 11 at 1. Petitioner had a non-contributory medical history. *Id*. He received both the flu and Tdap vaccinations in his left deltoid on October 2, 2017. Ex. 1 at 1. In his affidavit, G.C. stated that the vaccinations "seemed fairly routine" but that he "started to have pain in [his] left arm the day after [his] vaccines." Ex. 11 at 2. G.C. recalled that "[o]ver the next several weeks, [his] activities became increasingly limited because [he] could not raise [his] left arm above chest height without a lot of pain." *Id*. at 2-3.

On February 15, 2018 (approximately four months post-vaccination), G.C. first presented to his PCP with a chief complaint of left arm pain. Ex. 2 at 18. The nurse's notes state: "Pt c/o left arm pain x4 months. He states he cannot lift the arm and has a

---

[3] At the end of the hearing held on October 6, 2023, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing. *See* ECF No. 69. The transcript from the hearing is fully incorporated into this Decision.

sharp pain in it. He states this started after he was given the influenza and Tdap shots in both arm[s]." *Id*. On physical examination it was noted, Petitioner "CANNOT ABDUCT LEFT ARM AT SHOULDER PAST 90 DEGREES NO ABNORMALITY ON PALPATION." *Id*. at 19. The plan stated, "[r]eviewed possible dx. Wants to avoid MRI for now. One refill ibuprofen. I demonstrated rehab exercises that he will do at home. He will call and give us an update in 1 month." *Id*.

On April 20, 2018, and again on April 23, 2018, G.C. called his PCP's office stating "his L shoulder is not getting any better. Stated he is having a hard time raising it over his head. Would like a referral for MRI." Ex. 2 at 16-17. On April 25, 2018, G.C. sent a message to his PCP via the Patient Portal. *Id*. at. 9. G.C. stated:

> Hi Dr Baldwin, my arm is still bothering me and I would like to get an MRI done on it. I talked with my insurance company and that is what they recommended. The throbbing pain mostly at night has finally quit but it is pretty much useless trying to lift anything above my chest or overhead with my left arm; seems to lock up and the pain won't let me. I took most of the [ibuprofen] (seventy) but quit as they were making me [drowsy] driving home from work; afraid I was going to wreck and kill somebody. Did the exercises the best I could but something is not right and I need to know what it is.

*Id*. On April 26, 2018, G.C. underwent an MRI of his left shoulder. *Id*. at 6. The MRI revealed, "Complete tear of the rotator cuff. Early degenerative changes in the glenohumeral joint. Muscle and tendon impingement secondary to AC joint degenerative disease." *Id*.

On June 7, 2018, G.C. had an orthopedic surgery consultation. Ex. 2 at 1. Petitioner reported that his left shoulder pain began after a flu and Tdap vaccinations. *Id*. It was noted that Petitioner "had had a previous episode where he didn't tolerate injections well and had normally tried to avoid injections. Because of this, he states he has filed a claim related to shoulder injury related to vaccine administration." *Id*. The impression was a left full-thickness rotator cuff tear. *Id*. The recommendation states,

> Since he hasn't done well with medical treatment, and with pending litigation, surgical outcomes are typically less beneficial, and certainly he seems to have had more than his share of untoward reactions. Consequently, I have explained to him that he can get relief of symptoms with physical therapy by strengthening the muscles that are still intact, without taking on any of the risks of surgical treatment. He would like to try this and consequently was provided with a prescription for physical therapy

3

two times per week and then I will plan to see him back in one month, to see if this is proving to be of any benefit.

*Id.*

On June 16, 2018, G.C. filed a Vaccine Adverse Event Reporting System (VAERS) Report. Ex. 6 at 1. On the VAERS Report, Petitioner reported that his left arm pain began on October 3, 2017. *Id.* at 1-2.

On June 19, 2018, Petitioner had his initial physical therapy (PT) visit, and reported pain that had been ongoing since October 2017, following what he reported was an injection into his shoulder that was too high. Ex. 5 at 9. Petitioner reported that he lost a lot of range of motion and strength overall. *Id.* Petitioner indicated that "lately he feels like his shoulder is improving functionally, however he is rather frustrated with the situation and is upset with not being able to complete all tasks that he normally would have. [Patient] has most difficulty with reaching, carrying, and lifting as well as sleeping on his shoulder. [Patient] denies any numbness or tingling, and reports no surgeries or trauma to his shoulder other than what was reported." *Id.* Petitioner rated his pain at "8" on a scale of zero through ten. *Id.* at 8. The evaluation stated that Petitioner would benefit from PT to improve range of motion, strength, and overall function. *Id.* at 10. By July 12, 2018, Petitioner had six PT visits, and he had full range of motion and better joint mobility. Ex. 5 at 12-13. He still had some tightness in the posterior capsule, and his strength was not where it had been prior to injury. *Id.*

On July 30, 2018, G.C. returned to the orthopedist, reporting that although his pain had not completely resolved, it was much improved resulting in better sleep and significantly better range of motion. *Id.* Additionally, G.C. reported pain while lifting anything of appreciable weight from a height, but was not having to take any medicine on a routine basis. *Id.* The orthopedist noted that Petitioner's tear would not heal on its own, and even if symptoms subsided there was a possibility of extending the tear and losing more function. *Id.* Petitioner was noted to be very pleased with therapy and decided to continue on an independent exercise program. *Id.* Petitioner returned to the orthopedist on October 4, 2018, noting that his pain had markedly decreased and he was sleeping better, however, he was still not able to sleep on his right side. Ex. 10 at 1.

### III.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks

4

compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). The *Graves* decision maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it emphasizes the need to focus on what the *petitioner* in question should rightfully receive, all things being equal (although it does not preclude consideration of what comparable other claimants received).

### IV. Appropriate Compensation in this Matter

#### A. Past Pain and Suffering

Petitioner's awareness of his injury is not disputed, leaving only its severity and duration to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and considered the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.

Petitioner requests an award of $55,000.00 in past pain, suffering and emotional distress for his SIRVA. Br. at 19, 20. In addition to his intrusive treatment course, his SIRVA has had a significant effect on his quality of life, including continued difficulty lifting with two hands overhead, putting on a shirt or jacket, playing catch or hoops with his nephews, getting up from sitting on the floor, making the bed, washing his car or motorcycle, and most upsetting, he cannot ride his Harley, which was his favorite pastime. *Id.* at 15.

G.C. asserts that his pain and suffering is consistent with those described in several prior SIRVA damages decisions - *Couch*, *Welch*, and *Rayborn*[5] (cases in which the claimants were all awarded $55,000.00 in past pain and suffering). Most significantly, in all three cases the petitioners "presented for their initial treatment approximately four months after vaccination." Br. at 18. Additionally, "[those petitioners] had comparable pain ratings of up to 8 out of 10. For those petitioners who sought physical or occupational

---

[5] *Couch v. Sec'y of HHS,* No. 20-1246V, 2022 WL 4453921 (Fed. Cl. Aug. 24, 2022) (Petitioner was prescribed meloxicam, her pain was rated as high as 8 out of 10, but as time was lower, one MRI, one x-ray, one cortisone injection, no in-person PT due to COVID-19, one year in duration); *Welch v. Sec'y of HHS,* No. 18-660V, 2021 WL 4612654 (Fed. Cl. Sept. 2, 2021) (Petitioner used over-the-counter pain medication, attended six PT sessions, one MRI, no cortisone injections, one year in duration); *Rayborn v. Sec'y of HHS*, No. 18-226V, 2020 WL 5522948 (Fed. Cl. Feb. 1, 2018) (Petitioner self-treated with over-the-counter pain medicine, her pain was rated between 2 out of 10 and 6 out ten, one MRI, attended 14 PT sessions, nine month duration).

6

therapy, the number of visits was similar to that of [G.C.], who attended eight visits. Each petitioner underwent an MRI, which all revealed SIRVA-related findings, however only the *Welch* petitioner was found to have a rotator cuff tear similar to [G.C.]. [G.C.'s] 1.5 x 1.5 cm complete rotator cuff tear is a significant injury found on MRI and one that distinguishes his injury from the *Couch* and *Rayborn* petitioners." *Id.* at 18-19. Petitioner also noted that his duration of treatment was comparable with these cases. *Id.* at 19.

In response, Respondent recommends a past pain and suffering award of no more than $27,500.00. Opp. at 2. Respondent asserts that Petitioner experienced a very mild SIRVA in comparison to most other SIRVA cases in the Program. *Id.* at 8. Petitioner's case is thus distinguishable from those that he cites. Opp. at 7. Petitioner has failed to demonstrate that he is entitled to more than Respondent's proffer. *Id.*

In particular, Respondent argues that Petitioner's four-month delay in seeking treatment, which he describes as "a significant gap", suggests that Petitioner's pain was not severe. Opp. at 7. Thereafter, Petitioner treated intermittently for approximately eight months until one year post-vaccination, undergoing one massage session and eight PT sessions during that time with good results, and with no subsequent treatment. *Id.* at 8. Respondent also notes the MRI finding of degenerative disease revealed another factor that may have contributed to Petitioner's symptoms, and Petitioner did not seek treatment beyond one year post-vaccination. *Id.* Respondent argues that the petitioners in *Ramos* and *Mejias* experienced more severe treatment courses.[6]

The record reveals that Petitioner overall had a generally mild-to-moderate course of SIRVA – one MRI, eight PT sessions, one massage therapy session, prescription ibuprofen for pain, and a one-year treatment course. Petitioner's objective pain ratings are not well-documented in the record, but was noted as 8 out of 10 when evaluated by PT. *See* Ex. 5 at 8. Notably, Petitioner did not receive any steroid or cortisone injections and he also did not undergo surgery – meaning (in accordance with most pain and suffering awards in SIRVA cases) he likely should not receive in excess of $100,000.00.

The cases cited by Petitioner are most instructive in determining damages in this case. With minor degrees of variation, they involved petitioners who all received one MRI, had a similar number of PT sessions, treatment courses lasting approximately one year or less, and no more than one cortisone injection (if any). *See* cases cited *supra* note 5. Respondent emphasizes, however, that Petitioner did not seek treatment for his shoulder symptoms until four months post-vaccination. *See* Opp. at 7. Respondent asserts that

---

[6] *Ramos v. Sec'y of HHS,* No. 18-1005V, 2021 WL 688576 (Fed. Cl. Jan. 4, 2021) (awarding $40,000.00 for past pain and suffering); *Mejias v. Sec'y of HHS,* No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Nov. 10, 2021) (awarding $45,000.00 for past pain and suffering).

7

this four-month delay is a significant gap and suggests that Petitioner's pain was not severe. *Id.* Respondent accurately states that delays in seeking treatment, as well as gaps in treatment, weigh in my determination of the severity of a petitioner's pain and suffering. *See id.* (citing *Shelton v. Sec'y of HHS,* No. 19-279V, 2021 WL 2550093, at *7 (Fed. Cl. May 21, 2021) and *Harper v. Sec'y of HHS,* No. 18-202V, 2021 WL 5231980, at *4 (Fed. Cl. Oct. 8, 2021)). However, each comparable case cited by Petitioner also involved a similar treatment delay. *See Couch*, 2022 WL 4453921, at *3, 5 (initial treatment delay of approximately four months); *Welch*, 2021 WL 4612654, at *2 (first sought care 110 days post-vaccination); *Rayborn*, 2020 WL 5522948, at *11 (opted to self-treat her injury for approximately four months). Therefore, while delay does bear on severity of injury in determining the proper pain and suffering amount, it is already "priced" into Petitioner's comparable cases.

Overall, the totality of evidence suggests a past pain and suffering award close to, but slightly less than (based on severity), the comparable cases cited by Petitioner would be the fairest award. Thus, and pursuant to my oral ruling on October 6, 2023 (which is fully adopted herein), **I find that $50,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**

### B. Past Unreimbursed Expenses

Initially, Petitioner requested $998.74 in past unreimbursed expenses. Br. at 20. However, in his reply Petitioner revised his past unreimbursed expenses request to $908.74. Reply at 11, n. 14. In his brief, Respondent contended that the evidence only supported reimbursement of $819.59. Opp. at 11. Respondent argued that the amounts sought for an August 20, 2018 encounter ($15.00), and the purchase of ice cleats ($74.15), were not related to the diagnosis or treatment of Petitioner's left shoulder symptoms. *Id.* at 10-11. However, at the Motions Day hearing, Respondent conceded the amount of the ice cleats "because they appear to be recommended by the doctor." (Hr'g Tr. 13:3-5, Oct. 6, 2023.)

Thus, the only remaining expense in dispute is $15.00 for Petitioner's August 20, 2018 encounter. Petitioner saw a new PCP on August 20, 2018 to establish care and to discuss a possible sleep apnea referral. Ex. 7 at 1. It is clear that Petitioner's SIRVA was mentioned at this visit; however, there is no indication that there was any further assessment by the new PCP regarding his SIRVA. *Id.* Rather, it was noted that Petitioner "moves all extremit[ies] spontaneously with normal range of motion." *Id.* at 2. Accordingly, I agree with Respondent that the medical expenses Petitioner incurred for this encounter are not compensable as part of damages. I thus find that Petitioner is entitled to $893.74 for past unreimbursed medical expenses.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, I find that **$50,000.00 represents a fair and appropriate amount of compensation for G.C.'s past pain and suffering.** I find that and award of **$893.74 is appropriate compensation for G.C.'s past unreimbursed expenses.**

Accordingly, **I award Petitioner a lump sum payment of $50,893.74 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

                                       **s/Brian H. Corcoran**
                                       Brian H. Corcoran
                                       Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.